IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CARL D. DOBERSTEIN, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. CIV-19-171-RAW-SPS |
| ) | |
| KILOLO KIJAKAZI, ) | |
| Acting Commissioner of the Social ) | |
| Security Administration,[1] ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

The claimant Carl D. Doberstein requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration denying her application for benefits under the Social Security Act. He appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision should be AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he

---

[1] On July 9, 2021, Kilolo Kijakazi became the Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Kijakazi is substituted for Andrew M. Saul as the Defendant in this action.

is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: (1) whether the decision was supported by substantial evidence, and (2) whether the correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term "substantial evidence" requires "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). However, the Court may not reweigh the evidence nor substitute its discretion for that of the agency. *See Casias v. Secretary of Health & Human*

---

[2] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if his impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), he is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that he lacks the residual functional capacity (RFC) to return to his past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account his age, education, work experience, and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was forty-one years old at the time of the administrative hearing (Tr. 43, 49). He completed his GED in 2014, and has no past relevant work (Tr. 32, 335). The claimant alleges he has been unable to work since an alleged onset date of June 24, 2016, due to severe back pain, chronic anxiety, chronic pain, cervical damage, nerve damage in the legs, and depression (Tr. 334).

## Procedural History

On August 15, 2016, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. His applications were denied. ALJ Michael Mannes conducted an administrative hearing and determined that the claimant was not disabled in a written decision dated August 31, 2018 (Tr. 20-34). The Appeals Council denied review, so the ALJ's decision represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. At step two, the ALJ determined that the claimant had the severe impairments of osteoarthrosis and

allied disorders, anxiety, and obsessive-compulsive disorders (Tr. 23). He then found at step four that the claimant had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. §§ 404.157(a) & 416.967(a), except that he could never climb ladders/ropes/scaffolds, crouch, or crawl; only occasionally climb ramps/stairs, stoop, or kneel; and frequently balance, as well as reach, handle, and finger with the left upper extremity. Additionally, he found that the claimant could perform simple, routine, and repetitive tasks, have occasional interaction with supervisors and co-workers, have incidental contact with the general public in performance of work-related tasks, and respond appropriately to changes in a routine work setting (Tr. 24). The ALJ thus concluded at step five that although the claimant had no past relevant work to return to, he was nevertheless not disabled because there was work he could perform, *e. g.*, document preparer, touch-up screener, and surveillance system monitor (Tr. 32-34).

## Review

The claimant's sole contention of error is that the ALJ failed to identify jobs he could perform in light of the assigned RFC. The undersigned Magistrate Judge finds this contention unpersuasive for the following reasons.

At the administrative hearing, the ALJ elicited testimony from a vocational expert ("VE") to determine if there were jobs the claimant could perform with his limitations (Tr. 84-91). He posed a series of hypothetical questions requiring the VE to assume various limitations and identify the work someone with such limitations could perform. First, the ALJ posited an individual with the age and education of the claimant with:

> The sedentary exertional level; frequently climbing ramps and stairs; never climbing ladders, ropes, and scaffolds; frequent balancing; occasionally stooping, kneeling, crouching, or crawling. Frequently reaching, handling, and fingering with the left upper extremity; can perform simple, repetitive – simple, routine, and repetitive tasks. Frequent interaction with supervisors, and coworkers; occasional interaction with the general public; can respond appropriately to changes in a routine work setting.

(Tr. 84). The VE, having already testified that the claimant had no past relevant work, identified three sedentary jobs such a person could perform: (i) document preparer, DICOT § 249.587-018; (ii) touch-up screener, DICOT § 726.684.110; and (iii) surveillance system monitor, DICOT § 379.367-010 (Tr. 84-85). The ALJ asked if the VE's testimony was consistent with the job descriptions contained in the Dictionary of Occupational Titles ("DOT"), and she stated that it was (Tr. 85-86). The ALJ then posited a second hypothetical that was substantially similar but further limited the claimant as follows: "occasionally climb ramps or stairs, never climb ladders, ropes, or scaffolds; frequent balancing; occasionally stooping or kneeling; never crouching or crawling" (Tr. 85). The VE stated that the same three jobs would also fit this hypothetical (Tr. 85).

In his written decision, the ALJ determined that the claimant's RFC included the limitations from second hypothetical described above (Tr. 24). He then adopted the VE's testimony that the claimant could perform the sedentary jobs of document preparer, touch-up screener, and surveillance system monitor, and he further found that the VE's "testimony [wa]s consistent with the information contained in the [DOT]" (Tr. 33).

Here, the claimant contends that he cannot perform the jobs of document preparer, touch-up screener, and surveillance system monitor because they require reasoning levels

of two or three. He asserts that because ALJ limited him to simple, routine, and repetitive tasks that this constitutes a conflict with the Dictionary of Occupational Titles ("DOT").

Under Social Security Ruling 00-4p, "When vocational evidence provided by a VE or VS is not consistent with information in the DOT, the [ALJ] must resolve this conflict before relying on the VE or VS evidence to support a determination or decision that the individual is or is not disabled. The [ALJ] will explain in the determination or decision how he or she resolved the conflict. The [ALJ] must explain the resolution of the conflict *irrespective of how the conflict was identified.*" 2000 WL 1898704, at *4 (Dec. 4, 2000) [emphasis added]. Although the VE did not identify any conflict between her testimony and the DOT, the claimant contends there is a conflict with regard to the reasoning levels of each of the jobs identified. *See Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999) ("[T]he ALJ must investigate and elicit a reasonable explanation for any conflict between the [DOT] and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability.").

Two of the jobs identified, document preparer and surveillance system monitor, have a reasoning level of 3, *see* DICOT §§ 249.587-018, 379.367-010. A reasoning level of 3 is defined as the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations." *See* DICOT §§ 249.587-0018, 379.367-010. The reasoning levels for jobs in the DOT best identify the level of simplicity (or, conversely, complexity) associated with the job. *See Cooper v. Barnhart,* 2004 WL 2381515, at *4 (N.D. Okla. Oct. 15, 2004) ("The reasoning level, as

identified by Plaintiff, appears more similar to whether or not a claimant has a limitation to performing only simple tasks.") [citations omitted].   As to these jobs, the Court agrees that there is a conflict here which the ALJ failed to identify.  *Hackett v. Barnhart,* 395 F.3d 1168, 1176 (10th Cir. 2005) (holding that a limitation to "simple and routine work tasks" is "inconsistent with the demands of level-three reasoning.").

The remaining job, touch-up screener, however, has a reasoning level of 2.  *See* DICOT § 726.684-110.   A reasoning level of two requires a worker to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and to "[d]eal with problems involving a few concrete variables in or from standardized situations."   *See* DICOT § 726.684-110.   The claimant asserts that this reasoning level is likewise incompatible with simple work.  The Court agrees with the Commissioner, however, that a reasoning level of two *is consistent* with performing simple tasks, although a reasoning level of three is not, and that other courts have reached the same conclusion.  *See Hackett*, 395 F.3d at 1176 ("This level-two reasoning appears more consistent with Plaintiff's RFC [limiting her to simple and routine work tasks.]"); *Stokes v. Astrue*, 274 Fed. Appx. 675, 684 (10th Cir. 2008) ("Ms. Stokes' second argument is that the ALJ's limitation to simple, repetitive and routine work should be construed as a limitation to jobs with a reasoning-level rating of one.  We disagree.").  *See also Couch v. Berryhill*, 2017 WL 1194344, at *4 (E.D. Okla. March 13, 2017) ("In accordance with the court's findings in *Hackett*, a restriction to simple work is consistent with this reasoning level [of 2]."); *Goleman v. Colvin*, 2016 WL 3556958, at *4 (W.D. Okla. May 6, 2016)

(where RFC limited claimant to "simple, routine, repetitive instructions," [t]he ALJ properly relied on the jobs identified by the VE with a reasoning level of two.").

The undersigned Magistrate Judge thus finds that the identification of the document preparer and surveillance system monitor jobs is harmless error because there is still a job identified that does not pose a conflict.[3] *See Stokes,* 274 Fed. Appx. at 684 (finding that any error on whether claimant could perform jobs was harmless error since there were still two jobs claimant could perform and no "reasonable factfinder could have determined that suitable jobs did not exist in significant numbers in either the region where Ms. Stokes lives or several regions of the country.").

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were applied by the ALJ, and the Commissioner's decision is therefore legally correct. The undersigned Magistrate Judge thus RECOMMENDS that the Court AFFIRM the decision of the Commissioner. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

---

[3] Although the claimant does not allege that this job does not exist in significant numbers, the undersigned Magistrate Judge nevertheless notes that the VE testified that there were 24,000 touch-up screener jobs nationally and further finds this amount constitutes a significant number. *See, e. g., Rogers v. Astrue*, 312 Fed. Appx. 138, 142 (10th Cir. 2009) (finding the ALJ could rely on 11,000 jobs nationally as substantial evidence to support her finding of non-disability); *Jones v. Colvin*, 2015 WL 5573074, at *3 (E.D. Okla. Sept. 22, 2015) (finding 15,520 jobs in the national economy significant); *Holmes v. Saul*, 2019 WL 3290492, at *6 (D. N.M July 22, 2019) (finding 11,700 jobs in the national economy significant).

**DATED** this 31st day of August, 2021.

  _____
  **STEVEN P. SHREDER**
  **UNITED STATES MAGISTRATE JUDGE**